**A. LESCHEN & SONS ROPE CO. v. AMERICAN STEEL & WIRE CO.**
Patent Appeal No. 2788.

Court of Customs and Patent Appeals.
Jan. 25, 1932.

456

H. G. Cook, of St. Louis, Mo., and Melville Church, of Washington, D. C., for appellant.

D. Anthony Usina, of New York City (Usina & Rauber, of New York City, of counsel), for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

BLAND, Associate Judge.

This is an appeal from the decision of the Commissioner of Patents of the United States Patent Office in a trade-mark opposition proceeding. in which the Commissioner reversed the decision of the Examiner of Interferences and held that he erred in sustaining the opposition and in adjudging that the applicant was not entitled to register.

The applicant's mark is for use on wire rope, and consists of a silver strand which is incorporated in the rope during its manufacture, and applicant alleges use of the same since March 14, 1922. In its application, it states that "No claim is made herein to the registration of the representation of the wire rope."

Upon this record there is some little confusion as to what kind of mark opposer relies upon. In its "Grounds of Opposition" it seems to rely upon a mark consisting of "a helical band of distinctive color applied thereto, such mark being usually applied by painting one of the strands of said rope." It does not definitely set up its registered trade-mark which is described in one of the decisions, hereinafter referred to, in the following language: "Trade-mark consisting of a red or other distinctively colored streak applied to or woven in a wire rope. The color of the streak may be varied at will, so long as it is distinctive from the color and body of the rope. The essential feature of the trade-mark is the streak of distinctive color produced in or applied to a wire rope. This mark is usually applied by painting one strand of the wire rope a distinctive color, usually red."

The third ground of appellant's opposition is to the effect that, by reason of its marking its wire rope as aforesaid, its product has become widely known as "Colored Strand" wire rope, and it is presumed that the appellant implied that its mark had acquired a secondary meaning. It is unnecessary for us to consider this phase of the case, since the record is barren of any evidence tending to establish such fact, and

the allegation was denied in the answer to the opposition.

In its answer, appellee makes the following statement: "Applicant denies that Opposer is the owner of a trade-mark as described in Paragraph 2 of its notice of opposition broadly as a helical band of distinctive color, but admits that Opposer has applied to its wire rope continuously for many years a mark distinguished by painting red one of the strands of said rope."

In the agreed statement of facts it is said: "It is agreed * * * that the said A. Leschen & Sons Rope Company has marked wire ropes or cables of its manufacture with a helical stripe of uniform width and distinctive color produced by painting one of the strands of the rope red and has done this continuously for a period long antedating the use by said The American Steel and Wire Company of New Jersey of the mark claimed in its present application for registration; and has used this mark as its trade-mark."

The Commissioner of Patents treated the opposer's mark as one which "consists of the use of a red strand in a rope of like construction" to that of appellee. The Examiner of Interferences evidently did the same inasmuch as he remarks: "The goods of the parties are the same, namely wire rope, and the difference in the marks used by the parties is merely one of color."

The Examiner of Interferences said that the same question had been considered in A. Leschen & Sons Rope Company v. Broderick & Bascom Rope Company, 36 App. D. C. 451, 454, and A. Leschen & Sons Rope Company v. American Steel & Wire Co. of New Jersey, 36 App. D. C. 456, and concluded that these cases decided the issue and that he was bound thereby, and sustained the opposition.

The Commissioner of Patents regarded the cases of A. Leschen & Sons Rope Company v. Broderick & Bascom Rope Company, 201 U. S. 166, 26 S. Ct. 425, 50 L. Ed. 710; Samson Cordage Works v. Puritan Cordage Mills (C. C. A.) 211 F. 603, L. R. A. 1915F, 1107, and A. Leschen & Sons Rope Company v. Fuller et al. (C. C. A.) 218 F. 786, as controlling, and said: "Now, if the opposer's mark, by being limited to a red stripe or strand, permits the use by others of wire ropes with strands of other colors, then it would seem to follow that the applicant has the right to use its silver strand as a trade-mark, notwithstanding the opposer's red strand trade-mark; and, if

the applicant possesses the right to use its silver strand, no good reason is apparent why said mark should not be registered."

In addition to the above-quoted statement by the Commissioner, his decision contains the following: "If it were assumed, however, that a yellow strand so nearly resembles a red strand, when they are used to identify wire cables as to their origin or ownership, as to be likely to cause confusion or mistake in the mind of the public, still it is believed that such resemblance does not exist as between the applicant's silver strand and the opposer's red strand."

We do not agree with the correctness of the statement, "if the applicant possessed the right to use its silver strand, no good reason is apparent why said mark should not be registered," nor can we concur in the finding that there is such a difference between a yellow strand and a silver strand as to justify the conclusion reached by the Commissioner.

In A. Leschen & Sons Rope Co. v. Broderick & Bascom Rope Co., 201 U. S. 166, 26 S. Ct. 425, 426, 50 L. Ed. 710, the court had before it the sole question as to whether or not appellant's registered mark, which in that instance consisted of any "distinctively colored streak applied to or woven in a wire rope," was a valid mark. It held that appellant's registered trade-mark covered all colors and was too broad to be valid, and intimated that it might have been held valid if the trade-mark had been limited to painting one strand red, and said: "It is true that the drawing annexed to the registration, a copy of which is here given, as well as the exhibits furnished, show one of the strands colored red; and if the trade-mark were restricted to a strand thus colored, perhaps it might be sustained; but the description of a colored streak, which would be answered by a streak of any color painted spirally *with* the strand, longitudinally *across* the strands, or by a circular streak around the rope, was held by both courts, and we think properly, too indefinite to be the subject of a valid trademark. Certainly a trademark could not be claimed of a rope, the entire surface of which was colored; and if color be made the essential feature, it should be so defined, or connected with some symbol or design, that other manufacturers may know what they may safely do. Upon the plaintiff's theory, a wire rope containing a streak of any description or of any color would be an infringement, and a manufacturer honestly desiring

to distinguish his wire rope from that of the plaintiff's by difference in color might, by adopting a white streak running along the length of the rope across the strands, find himself an infringer, when his real object may have been to obtain a mark which would distinguish his manufacture from that of the plaintiff's. Even if it were conceded that a person might claim a wire rope colored red or white, or any other color, it would clearly be too broad to embrace all colors. So, although it might be possible to claim the imprint of a colored figure on a wire rope, the figure should be so described that other manufacturers would know how to avoid it. If the trademark be a colored streak, it should be, at least, described, and a statement of the mode in which the same is applied and affixed to the rope; and a trademark which may be infringed by a streak of any color, however applied, is manifestly too broad." (Italics quoted.)

It will be noticed that a red strand trademark was not before the Supreme Court, and necessarily its conclusions on that subject, intimating that a certain, definite, colored strand might be the subject-matter of a valid trade-mark, and that any other color which distinguished the goods of another might be the basis of a valid trade-mark, is not regarded as binding or controlling of our action in this case. It was not regarded as controlling, in an almost identical case between the same parties at bar, by the Court of Appeals of the District of Columbia, our predecessor in our present patent and trademark jurisdiction, in A. Leschen & Sons Rope Company v. American Steel & Wire Co. of New Jersey, supra.; and also in A. Leschen & Sons Rope Company v. Broderick & Bascom Rope Co., supra.

In A. Leschen & Sons Rope Company v. Broderick & Bascom Rope Co., supra, the Court of Appeals had before it the red strand trade-mark of appellant and the yellow strand trade-mark of the Broderick & Bascom Rope Company. It held, in an opinion by Mr. Justice Robb, that the Supreme Court's decision holding invalid a registered trade-mark "does not deprive such owners of any property right which they may have acquired by the *actual use* of a good trademark" [Italics ours], and said: "The opinion of the Supreme Court went no further than to deprive the present application of the presumption of ownership which a good registration would have afforded it."

Further along in the opinion, we find the following clear and forceful language: "We come now to the consideration of the question whether the two marks here involved are sufficiently alike as 'to be likely to cause confusion or mistake in the mind of the public, or to deceive purchasers.' 33 Stat. at L. 724, chap. 592, U. S. Comp. Stat. Supp. 1909, p. 1275 [15 USCA §§ 81–109]. The only difference in the marks is that of color. They are both used upon wire rope, and are both applied in substantially the same manner. It is admitted that appellant has used its mark for more than twenty years, and if this were a case of unfair competition there would be little doubt as to appellant's right to relief, for while color, generally speaking, is not a proper subject of a trademark, a rival dealer may not appropriate another's mark by merely changing its color. It is manifest that if appellee is entitled to use precisely the same mark as that used by appellant, but colored yellow instead of red, every color of the rainbow may be appropriated by other wire rope manufacturers, and may be similarly applied. Such a result, in our opinion, would lead to no end of confusion, the value of appellant's mark would be destroyed, and the purchasing public would be liable to imposition. The Patent Office has held that there is no conflict between the two marks, and the appellee insists that the evidence fails to show such a conflict; but both marks are before us, and, in the language of the circuit court of appeals for the eighth circuit, 'the evidence of the eyes is more persuasive and satisfactory than any other.' Layton Pure Food Co. v. Church & D. Co., 104 C. C. A. 464, 182 F. 24."

On the same date, the Court of Appeals of the District of Columbia handed down the Broderick Case, supra, it decided A. Leschen & Sons Rope Co. v. American Steel & Wire Co. of New Jersey, supra; the parties to which latter suit are the same as in the case at bar. In this case, the Leschen mark was the same red strand mark as in the case at bar. The American Steel & Wire Company sought to register a trade-mark which consisted of a strand of rope colored blue. The Commissioner of Patents had awarded registration to the appellee, and, following its decision in the Broderick Case, supra, the Court of Appeals reversed the decision of the Commissioner.

It is contended here by appellant that the decision of the Court of Appeals of the District of Columbia (this court being the legal successor of such court) in the case of A. Leschen & Sons Rope Co. v. American

Steel & Wire Co. is res adjudicata of the issues before us. The parties are the same, but the trade-marks are different, and we would not be justified in applying the doctrine of res adjudicata; but we do feel that the reasoning and conclusions in the two decisions of the District of Columbia Court of Appeals are sound and in entire harmony with the decisions of this court in other cases, and should be followed in the decision of this case.

We have said that, in determining the right of an applicant to register a trade-mark, it is not necessary for us to pass on the validity of the opposer's mark (California Canneries Co. v. Lush'us Products Co., 49 F.(2d) 1044, 18 C. C. P. A. 1480, 1483), and that under the same circumstances the validity of the registration of the opposer's mark was not before us. Revere Sugar Refinery v. Joseph C. Salvato, 48 F.(2d) 400, 18 C. C. P. A. 1121, 1123; Lufkin Rule Co. v. Master Rule Mfg. Co., 40 F.(2d) 991, 17 C. C. P. A. 1227, 1230. In a number of cases we have held, in substance, that, in urging the registrability of an applicant's mark, it was not helpful to point out that others had used the same mark as that of opposer as a trade-mark. Sharp & Dohme v. Parke, Davis & Co., 37 F.(2d) 960, 17 C. C. P. A. 842; American Fruit Growers, Inc., v. Michigan Fruit Growers, Inc., 38 F.(2d) 696, 17 C. C. P. A. 906; National Biscuit Co. v. Sheridan, 44 F.(2d) 987, 989, 18 C. C. P. A. 720; California Packing Corp. v. Tillman & Bendel, Inc., 40 F.(2d) 108, 17 C. C. P. A. 1048, 1057.

As we view it, in the light of the foregoing authorities, it is not necessary in deciding the issue at bar to pass upon the validity or the registrability of appellant's mark or the rights of others to use the same or similar marks, and we confine ourselves to the sole question of the applicant's right to register.

The right to oppose the registration of a trade-mark is by statute (15 USCA § 86) given to "Any person who believes he would be damaged by the registration of a mark." We have been required, on at least one occasion, to decide who may oppose the registration of a mark, and held in Bookman v. Oakland Chemical Co., 40 F.(2d) 1006, 17 C. C. P. A. 1213, that the "right to oppose registration of trade-mark is not limited to those possessing exclusive ownership of similar mark. * * * "

The right to use a trade-mark does not necessarily carry with it the right to register the same. In National Biscuit Co. v. Sheridan, supra, this court said: "True enough, we have said, in substance, that a trade-mark which cannot be defended in the common law is not entitled to registration, but this is not saying that all trade-marks which can be defended in the common law, in view of the wording of the statute, are entitled to registration."

Because of the acts of the parties, one might acquire the right to use a mark and could not be prevented from using it, even though confusion in the trade resulted from such use. The second proviso of section 5 (b) of the Trade-Mark Act of February 20, 1905, as amended (15 USCA § 85, subd. b, proviso 2), was designed to prevent confusion and not to promote or add to it. In re S. C. Herbst Importing Co., 30 App. D. C. 297, 298; Goodrich Co. v. Hockmeyer, 40 F.(2d) 99, 17 C. C. P. A. 1068; Celotex Co. v. Bronston Bros. & Co., 49 F.(2d) 1048, 18 C. C. P. A. 1490.

Since Congress has been given no power to legislate on the substantive law of trade-marks (American Steel Foundries v. Robertson, 269 U. S. 372, 46 S. Ct. 160, 70 L. Ed. 317), it would seem to follow that it did not have the right to enact legislation which, in every instance, would prevent confusion in the trade in the use of trade-marks. But it cannot be doubted that it had the constitutional right to provide a federally controlled place of registration and to deny registration therein, where confusion would likely result to the trade from the trade-mark use of such registered marks. National Biscuit Co. v. Sheridan, supra. See, also, California Packing Corp. v. Tillman & Bendel, supra, California Canneries Co. v. Lush'us Products Co., supra, and Sun-Maid Raisin Growers of Calif. v. American Grocer Co., 17 C. C. P. A. 1034, 40 F.(2d) 116.

The Commissioner concluded that a silver strand trade-mark would distinguish the goods of one from the goods of another using a red strand trade-mark, where the only difference in the marks was color, and that the first part of section 5 of the Trade-Mark Act (15 USCA § 85), supra, providing that "no mark by which the goods of the owner of the mark may be distinguished from other goods of the same class shall be refused registration" etc., required a registration un-

der such circumstances. The quoted provision from the first part of section 5 must be read in connection with the second proviso (15 USCA § 85, subd. b, proviso 2). I. E. Palmer Co. v. Nashua Mfg. Co., 17 C. C. P. A. 583, 34 F.(2d) 1002; California Packing Corp. v. Tillman & Bendel, Inc., supra; Goodrich Co. v. Hockmeyer, supra; Sun-Maid Raisin Growers of California v. American Grocer Co., supra. By construing the two provisions together, registration is required only when the mark sought to be registered so distinguishes the goods of the owner from the goods of the other that confusion is unlikely.

We do not think there is much less likelihood of confusion between a silver strand and a red strand than was held to exist between a red strand and a blue or yellow strand. Since color alone in the mark is the only distinguishing feature, we think that the probability of confusion is great.

The weight of authority is to the effect that a mark is not registrable if color alone is its distinguishing characteristic. In re General Petroleum Corp. of California, 18 C. C. P. A. 1444, 49 F.(2d) 966, and authorities cited; In re Sun Oil Co., 49 F.(2d) 965, 18 C. C. P. A. 1421; In re Walker-Gordon Laboratory Co., 53 F.(2d) 548, 19 C. C. P. A. —— (Patent Appeal No. 2813, decided December 7, 1931). It seems clear that before one trade-mark can be registered over the opposition of the owner of another for use on goods of the same descriptive properties, the applicant's mark must show dissimilarity other than color.

It may be pointed out that the trade-marks of both appellant and appellee are not such as are only distinguishable by color; that is to say, that the color is arranged in a particular way. As far as the question of confusion is concerned, this fact is immaterial, since both parties seek to apply their color in the same manner, and both marks present the same appearance except as to color.

The decision of the Commissioner of Patents is reversed.

Reversed.

GRAHAM, Presiding Judge, and LENROOT, Associate Judge (specially concurring).

We concur in the conclusion that the applicant is not entitled to registration of its mark which it describes as "a silver strand which is incorporated in the rope during the laying-in operation." We do so, however, upon different grounds than those stated in the opinion of the majority. As we understand the majority opinion, it proceeds upon the theory that confusion would result with opposer's mark if registration were allowed. In our opinion, the decision should rest upon the ground that the applicant's mark is not registrable, per se.

There has been much litigation concerning the mark of the opposer here, which is described in the agreed statement of facts herein to be "a helical stripe of uniform width and distinctive color produced by painting one of the strands of the rope red." These cases are referred to in the majority opinion. Leschen & Sons v. Broderick, 201 U. S. 166, 26 S. Ct. 425, 426, 50 L. Ed. 710; Leschen & Sons v. Broderick, 36 App. D. C. 451; Leschen & Sons v. Fuller (C. C. A.) 218 F. 786.

In none of these cases was the validity of the alleged trade-mark of the opposer upheld. In the case first above cited, the Supreme Court was passing upon the registered mark of Leschen & Sons. This mark was described as a "streak of distinctive color produced in or applied to a wire rope. This mark is usually applied by painting one strand of the wire rope a distinctive color, usually red.'" The court held the mark invalid, 201 U. S. 166, 26 S. Ct. 425, 426, 50 L. Ed. 710, saying, in part:

"Whether mere color can constitute a valid trademark may admit of doubt. Doubtless it may, if it be impressed in a particular design, as a circle, square, triangle, a cross, or a star. But the authorities do not go farther than this. * * *

"It is unnecessary to express an opinion whether, if the trademark had been restricted to a strand of rope distinctively colored, it would have been valid. * * *"

In the case secondly above cited, 36 App. D. C. 451, 456, the Court of Appeals of the District of Columbia stated, in addition to what is quoted in the majority opinion herein: "We have assumed, for the purposes of this opinion, that the Patent Office was right in holding that a mark consisting of a stripe of uniform width, spirally disposed around the surface of wire rope, may constitute a valid trademark. We have not deemed it necessary to consider the question, since neither party is in a position to raise it here."

In the case last above cited, 218 F. 786, 788, the Circuit Court of Appeals of the Eighth Circuit, in refusing to enjoin the use

of a yellow strand rope by one of opposer's competitors, said, in part: " * * * A colored strand, not restricted to any color, is not a valid trade-mark. A. Leschen & Sons Rope Co. v. Broderick & Bascom Rope Co., 134 F. 571, 573, 67 C. C. A. 418, 420; Samson Cordage Works v. Puritan Cordage Mills, 211 F. 603, 604, 607, 128 C. C. A. 203 [L. R. A. 1915F, 1107]. If it was the latter, and if that is a valid trade-mark, it is so because, and only because, it is limited to a red stripe or strand, and that limitation permits the use by others of wire ropes with strands of other colors, and the defendants do not infringe that trade-mark because they use a yellow strand."

Comparing the language just quoted with the reasoning of the majority opinion, conflict is observed. If the language of the Supreme Court and of the Circuit Court of the Eighth Circuit above quoted are to be construed as any intimation that the Leschen red strand mark is a valid trade-mark, it must be so because the Leschen mark is restricted to one color; namely, red. Hence, logically, that being true, the applicant here might legally claim the right to use a silver strand, because no rights of the opposer would be violated thereby.

But we believe that both reason and the weight of legal authority justify the view that neither a silver strand nor a red strand in a wire rope, by itself, constitutes a valid trade-mark. Such a mark consists of coloring a certain part of a manufactured article in a certain way, and nothing more. It would certainly not be held to be a valid trade-mark to color the entire rope in a certain way. As was said by the Supreme Court in Leschen Rope Co. v. Broderick, supra: "Certainly a trademark could not be claimed of a rope, the entire surface of which was colored."

It is well settled that a valid trade-mark cannot be acquired in the use of a color not connected with some symbol or design. Scriven Co. v. Morris (C. C.) 154 F. 914; Newcomer v. Scriven (C. C. A.) 168 F. 621; In re Waterman Co., 34 App. D. C. 185, 18 Ann. Cas. 1033; Taylor v. Bostick (C. C. A.) 299 F. 232; In re American C. L. Co., 28 App. D. C. 446.

What is the distinctive design which the registrant here claims? It says that it colors one strand of its rope silver. What sorts of ropes it manufactures, or how the strands are arranged, is not clearly defined. Whether its ropes consist of two, three, or ten strands is not stated. If the occasional view of a colored strand is to be the mark, such view may vary as the ropes vary in manufacture. Such a coloring of a rope strand does not, to our minds, indicate a design, but is rather a fortuitous matter, depending upon circumstances. It would be equally appealing to the reason if the manufacturer of tables would paint the tops of his tables red and the legs blue, and claims this for his trade-mark, irrespective of the kind of table manufactured. The same simile might be carried into every avenue of trade and commerce. Assume that a maker of automobiles paints the bodies of his cars yellow and the wheels black. This may constitute a design, for which he might possibly have a design patent; but may he register the same as a trade-mark composed of said color or design alone?

If he may, then it is because his color mark may be said to be associated with some distinctive symbol or design, for such is the law as laid down by the authorities. Then, if he is entitled to register such trade-mark under the laws of the United States, no one else may be permitted to use his trade-mark, by simply changing the colors, as, for instance, painting the bodies black and the wheels yellow. The majority opinion holds, and it is well-settled law, that one may not appropriate the trade-mark of another by simply changing the colors in which it is displayed. In this connection, reference is had to the authorities cited, in connection with other suggestions made herein.

This being true, to grant registration to such a color combination in such a case is to grant to the applicant a practical monopoly on all color combinations. Either such a registration must be restricted to the particular colors described in the application, or, in legal effect, it is as broad as the solar spectrum itself. Certainly, the latter was never intended by the law.

The more reasonable view of the matter, we think, is that one may not register a trade-mark which consists only of coloring one part of his article of manufacture in a certain way, unaccompanied by any other design or symbol. If the part of his manufactured article is of a particular form, so that it may be distinctive when colored, the design patent laws give ample protection for the shape and design of said part. This in itself, however, should give him no right to register the said combination of form and color as a trade-mark for his goods.

We believe the weight of better authority inclines to the view that such distinctive

coloring of a part of a device, as a strand of a rope, does not constitute a valid registrable trade-mark.

In re Waterman Co., 34 App. D. C. 185, 18 Ann. Cas. 1033, dealt with a mark proposed to be registered, which consisted in coloring the feed bar of a fountain pen red, and the portion of the fountain pen reservoir or handle adjacent thereto, black. In its application, the applicant said, "The trademark is applied to the goods during the manufacture by coloring the feed bar red." The Court of Appeals, citing the decision of the Supreme Court in Leschen & Sons v. Broderick, supra, refused to permit the registration, stating, "It is well settled that a trademark cannot be acquired in the use of color not connected with some symbol or design."

In Re American Circular Loom Co., 28 App. D. C. 446, a trade-mark was sought to be used on insulating tubes or coverings for electric wires which consisted in flakes of mica impressed on the external surface of the same. The Court of Appeals denied the registration, stating that this was nothing more than an ingenious attempt to obtain a trade-mark of which color, unconnected with some symbol or design, was the essential feature.

In Sawyer v. Horn (C. C.) 1 F. 24, a party was claiming as a trade-mark in part; a package consisting of a cylinder with a metal perforated top, sealed with red sealing wax. Such claim was held to be without legal right.

In Scriven Co. v. Morris, supra, it was sought to sustain a trade-mark which consisted of a piece of buff colored insertion used in drawers, which themselves were made of white jean. The court held that no valid trade-mark could be acquired therein, because it was the use of a color not connected with some symbol or design. This case was approved in Newcomer v. Scriven, supra.

In Davis v. Davis (C. C.) 27 F. 490, an arrangement of soap in a box by which a certain pattern of colors was presented to the eye was held not to be such a trademark as could be legally registered.

In Dodge Mfg. Co. v. Sewall et al. (C. C.) 142 F. 288, a manufacturer of rope secured a registration as a trade-mark of a colored thread twisted into the rope. The court held that, if this manufacturer had any trade-mark at all, it must be confined to a blue thread, which was the only one it had

ever used; but added that no trade-mark could be held to be valid which did not involve a figure or design.

Diamond Match Co. v. Saginaw Match Co. (C. C. A.) 142 F. 727, 729, involved an alleged trade-mark which consisted of coloring the head of a match red, with a blue tip thereon. The court held that such a mark did not constitute a valid trade-mark, stating, among other things, "Sometimes a color, taken in connection with other characteristics, may serve to distinguish one's goods, and thus be protected by the courts (Fairbank Co. v. Bell Mfg. Co., 77 F. 869, 23 C. C. A. 554; Ohio Baking Co. v. National Biscuit Co., 127 F. 116, 62 C. C. A. 116); but, as a rule, a color cannot be monopolized to distinguish a product (Fleischmann v. Starkey [C. C.] 25 F. 127; Mumm v. Kirk [C. C.] 40 F. 589)."

In Parker Pen Co. v. Finstone (D. C.) 7 F.(2d) 753, a registered trade-mark was involved which consisted of the drawing of a fountain pen with a red body portion and two black end portions; no claim being made for the representation of the fountain pen apart from the color. It was said that the trade-mark was applied by producing the same directly upon the pen body. The owner of this mark sought to enjoin the use by others of a similar mark, likewise used on fountain pens, with some slight difference. The court held that the use of red and black in the manufacture of fountain pens was not such a matter as could be the subject of monopoly, and held that the registered trademark was invalid.

In Samson Cordage Works v. Puritan Cordage Mills (C. C. A.) 211 F. 603, 607, L. R. A. 1915F, 1107, a manufacturer of sash cord, by braiding into his cord a colored strand, gave to the finished cord the appearance of having a series of spots arranged spirally about the circumference of the same. This had been registered as a trade-mark. The court said: " * * * How, apart from its color, can the exposed, though broken, surface of a braided strand be said to be a distinctive design, when the product of all manufacturers normally presents precisely the same feature and the same design; for (to apply the expressions of Mr. Justice Lurton in Newcomer & Lewis v. Scriven Co., which we have quoted above) the color thus is not impressed upon an 'arbitrary design,' nor is it employed in association with 'characteristics which serve to distinguish the article as made and sold by' complainant. In the absence of controlling

authority to the contrary, we are constrained to agree with the views expressed by the Circuit Court of Appeals of the Eighth Circuit. This, we think, results in a denial of the validity of complainant's trade-mark. * * * Complainant's alleged mark, if infringed by that of defendant, occupies the field as against all colored marks effected by the use not only of one braided strand, but even of two in a twelve strand cord, and whether so arranged as that the segments appear upon the surface two together or twice as close to each other. We think this result would give complainant an unwarranted monopoly, and that the District Court rightly dismissed the bill in the trade-mark case."

We had a somewhat similar matter before us in Lufkin Rule Co. v. Master Rule Mfg. Co., 40 F.(2d) 991, 17 C. C. P. A. 1227. In that case, it was sought to register as a trade-mark the words "Blue End," together with coloring blue the ends of rules which were manufactured by the applicant. The case was a close one and went off, not so much upon the question of color, as upon the fact that the words, "Blue End" were used as a part of the combination trademark. We did, however, in that case, state that if the matter depended upon the coloring alone of the ends of the rules, it did not constitute a valid trade-mark, because, by permitting the registration of such a mark, the applicant would secure a monopoly on all colors for ends of rules. That case went as far as we would be willing, in our present views of the matter, to go, in permitting registration of such marks.

In conclusion, we are of opinion the applicant is not entitled to registration of its mark. We do not believe it is such a mark as is entitled to registration under the Trade-Mark Act of February, 1905, as amended, and registration should be denied upon that ground.